United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

JESSE H.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 25-cv-04462-RMI

**ORDER RESOLVING SOCIAL SECURITY APPEAL**

Re: Dkt. Nos. 14, 15

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision finding that Plaintiff was not disabled under Title II and Title XVI of the Social Security Act. *See* Admin. Rec. ("AR") at 629.[2] The Appeals Council of the Social Security Administration declined to review the ALJ's decision. AR at 603. As such, the ALJ's decision is a "final decision" of the Commissioner of Social Security, reviewable by this court. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have filed briefs. (Dkts. 14, 15, 16). For the reasons stated below, the decision of the ALJ is REVERSED and this case is remanded for consideration in accordance with this Order.

**BACKGROUND**

Plaintiff filed an application for supplemental security income on March 25, 2015. He alleged a disability onset date of March 1, 2015. AR at 171–194. In June 2015, Dr. Lisa Kalich administered the WAIS-IV and BDI-II tests and diagnosed Plaintiff with Major Depressive

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record, which is independently paginated, has been filed in 14 attachments to Docket Entry No. 13. *See* Dkt. Nos. 13-1 through 13-14.

Disorder featuring recurrent and severe Psychotic Features, Borderline Intellectual Functioning, and Mild Alcohol Use Disorder. AR at 587. She found marked impairment in daily living activities and stated that Plaintiff was unlikely to regularly attend work. AR at 583–589. In October 2015, Dr. Aparna Dixit conducted a clinical interview and examination, diagnosing Plaintiff with Psychotic Disorder, Rule Out Cannabis Induced Psychotic Disorder, and Alcohol Abuse. AR at 591. Also in October 2015, Dr. Farah M. Rana conducted a physical examination of Plaintiff; she found no "sitting, standing, or walking limitations" and a "high probability of posttraumatic stress disorder." AR at 596.

The first ALJ decision denied benefits in 2017, finding that the medical record and Plaintiff's self-reported symptoms were inconsistent and thus did not establish a severe impairment. AR at 22–25. The Appeals Council denied review, and Plaintiff appealed to this court.[3] AR at 711. On May 26, 2020, this court reversed and remanded. AR at 725. This court found that the ALJ had erred in rejecting the three examining physicians' diagnoses to find that Plaintiff had no medically determinable mental impairment and ordered the ALJ to fully and fairly develop the record by procuring a suitable consultative psychiatric examination of Plaintiff. *Hudson v. Saul*, No. 19-CV-00337-RMI, 2020 WL 2733930, at *4–6 (N.D. Cal. May 26, 2020) (order granting Plaintiff's motion for summary judgment in first appeal).

On remand, Plaintiff's counsel obtained an additional psychological evaluation by Dr. Laura Catlin. In October 2022, Dr. Catlin reported marked limitations across all four paragraph B domains. AR at 1091–1101. Dr. Catlin opined that Plaintiff would miss four or more days of work per month and be off task more than 30% of the time. AR at 1091–1101. Additionally, per the court's remand instructions, the ALJ ordered a comprehensive psychological evaluation by agency examiner Dr. Megan Stafford in July 2023. Dr. Stafford administered several psychological tests and diagnosed Plaintiff with substance use disorders and rule-outs for borderline intellectual

---

[3] While this first appeal was pending, Plaintiff filed another application for benefits, this time for both supplemental income under Title XVI and disability benefits under Title II. AR at 618. The Appeals Council ordered this application to be consolidated with the first application after the court remanded the first ALJ decision for further consideration, and it ordered that the older regulations should apply to the consolidated case. AR at 618.

functioning and unspecified depressive disorder, and she found simple and repetitive tasks unimpaired. AR at 1103–1110. Outside of these doctors' opinions, Plaintiff does not have other medical records.

Plaintiff appeared and testified at the April 2023 hearing, which was cut short due to Plaintiff's audio issues. AR at 665. Then, Plaintiff failed to appear at the supplemental hearing held in December 2023; according to his counsel, Plaintiff was aware of the hearing as of one month prior but had been difficult to reach since then. AR at 640. At the supplemental hearing, the ALJ accepted testimony from medical expert Dr. David Peterson and vocational expert Timothy Farrell. AR at 640. Dr. Peterson testified that without current treatment records or substance use records reflecting remission, it would be "very difficult to establish a standalone psychiatric diagnosis outside of substance use." AR at 643. He offered no opinion as to Plaintiff's functional limitations. AR at 643. The ALJ presented Mr. Farrell with three questions. AR at 650–651. He asked about what work someone with Plaintiff's limitations could perform, if that work would still be possible with only the ability to perform simple tasks, and if someone off task 15 percent of the time could find work at all. AR at 650–651. Mr. Farrell responded respectively that there were several examples of jobs Plaintiff could perform, that the same jobs would still apply, and that such an employee would not be able to find work. AR at 650–651. The jobs Mr. Farrell listed were hand packager, machine packager, and laboratory equipment cleaner. AR at 651.

In the decision on remand, the ALJ halted his analysis at Step Two, finding that polysubstance use disorder was Plaintiff's only medically determinable impairment and that it was not a severe impairment. He found that the absence of medical records between 2015 and 2022 made it impossible to establish a limitation that lasted twelve consecutive months. AR at 622–623. The ALJ gave significant weight to Dr. Peterson's testimony and to Dr. Stafford's opinion. He gave little weight to Dr. Kalich, saying her report was "lacking in candor," and little weight to Dr. Catlin, saying that either Plaintiff withheld information from her or that she excluded information about his prior drug use on purpose. AR at 624–627. Due to Plaintiff's failure to appear at the second hearing, the ALJ found Plaintiff had constructively waived his testimony. AR at 619. The ALJ issued the unfavorable decision on March 8, 2024, and the Appeals Council declined to

United States District Court
Northern District of California

review the decision on April 1, 2025. AR at 615–637, 603–609.

Plaintiff moves for reversal and remand for immediate payment of benefits, in part because this case has been pending for over 10 years. (Pl.'s Reply Br., Dkt. 16, at 3.) Defendant concedes that the ALJ erred and that remand is warranted but opposes an immediate award. (Def.'s Br., Dkt. 15, at 3.) Defendant argues that contradictions in the record and unresolved issues at Steps Three through Five require further proceedings. (Def.'s Br. 4.)

## LEGAL STANDARDS

The Social Security Act limits judicial review of the Commissioner's decisions to final decisions made after a hearing. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* A district court has limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, courts "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## DISCUSSION

The parties agree on remanding the case but dispute the appropriate method of remand. The court finds that remand for further administrative proceedings, rather than for immediate

payment of benefits, is appropriate because the record is underdeveloped and conflicting. It is well-established that "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [for further proceedings]." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). However, remand with instructions to award immediate benefits is proper when the record makes it clear the claimant is entitled to benefits. *Garrison,* 759 F.3d at 1019. Ninth Circuit courts apply the three-part credit-as-true standard to determine if immediate benefits are warranted upon remand. Each element must be satisfied for the court to remand with such instructions:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. This standard is not met here. The record contains inconsistencies sufficient to preclude the extraordinary remedy of an immediate award. Thus, the court remands this case for further administrative proceedings.

First addressing the second credit-as-true element, the court finds that the ALJ failed to provide legally sufficient reasons for rejecting the opinions from Dr. Kalich and Dr. Catlin. The ALJ rejected Dr. Kalich's and Catlin's opinions primarily because (1) they were contradicted by Dr. Peterson's testimony, which the ALJ gave "significant weight," AR at 624; (2) they were "lacking in candor" and "designed for advocacy," respectively, AR at 624–26; and (3) they were not supported by the medical record, which did not contain medical evidence of a diagnosis for the required 12-consecutive months, AR at 625–26. The ALJ gave significant weight to Dr. Peterson's testimony, using it to confirm that "no diagnosis could be established from the record other than substance abuse." AR at 624. However, this conclusion is much more definitive than Dr. Peterson's actual testimony—given the lack of treating records from 2015 to 2022, Dr. Peterson testified only that it would be "very difficult to establish a standalone psychiatric diagnosis outside of substance use and not complying with prescribed care." AR at 643. After discussing the contents of the medical evidence, he said that Plaintiff's noncompliance with treatment, substance

use, and "questionable" self-reporting "[made] the record difficult to interpret." AR at 645. Finally, as to the medical opinions he reviewed, Dr. Peterson said only that the different diagnoses "don't meet all of the primary issue of the materiality of the substance and the noncompliance" without identifying which diagnoses or opinions he believed were insufficient. AR at 646. When an ALJ relies on a non-examining expert's equivocal statement indicating more detailed reports are required, the ALJ "[is] not free to ignore [the expert's] equivocations and his concern over the lack of a complete record upon which to assess [the claimant's] mental impairment." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, the ALJ transformed Dr. Peterson's conclusion that diagnosis would be difficult into the conclusion that Plaintiff had no diagnosable condition, ignoring his equivocations. Moreover, Dr. Peterson's testimony did not directly contradict Dr. Kalich's and Catlin's opinions, and thus it was not a proper basis on which to reject their opinions. *See Jones v. Barnhart*, 56 F. App'x 818, 819–20 (9th Cir. 2003) ("Given Dr. Drucker's failure to express any firm conclusion that Dr. Freinhar's opinion was wrong and his requests for further examination, Dr. Drucker's testimony was not a sufficient basis on which to discount Dr. Freinhar's opinion."). Thus, the use of Dr. Peterson's testimony to discount the examining doctors' medical opinions was not legally sufficient.[4] *Tonapetyan*, 242 F.3d at 1150.

The ALJ also failed to provide legally sufficient reasons for rejecting the opinions of Dr. Kalich and Dr. Catlin as dishonest. An ALJ must cite to "actual improprieties" in a report when disregarding it as untrustworthy. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996) (finding that since the ALJ did cite to actual improprieties, he did not abuse his discretion in rejecting a doctor's medical opinion). An ALJ may only reject a treating or examining doctor's opinion if there are "specific and legitimate reasons that are supported by substantial evidence" because their

---

[4] Moreover, the ALJ gave improper weight to Dr. Peterson's testimony because Dr. Peterson did not give a medical opinion. A medical opinion is a "[statement] from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Dr. Peterson provided no opinion as to the nature, severity, or limitations of Plaintiff's impairments; instead, he primarily opined on the issue of whether he could assess Plaintiff's mental impairment from the record given Plaintiff's substance use. As a non-medical opinion, this testimony could not be used to establish a diagnosis—or lack thereof—without corroborating medical evidence. *See, e.g.*, *Meredith ex rel. D.H. v. Astrue*, No. CV-09-0384-CI, 2011 WL 1303308, at *5 (E.D. Wash. Apr. 5, 2011) ("[N]on-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence.").

opinions are entitled to greater weight. *Garrison,* 759 F.3d at 1012. Additionally, "the opinion of examining physicians is entitled to greater weight than the opinion of a non-examining physician." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995).[5] Here, the ALJ characterized the opinions of Dr. Kalich and Dr. Catlin as advocacy-driven rather than neutral. AR at 624–626. For Dr. Kalich, the ALJ based his candor determination on how she documented Plaintiff's cocaine use pattern "yet assessed only a mild alcohol use disorder without any explanation." AR at 624. This is a misrepresentation of Dr. Kalich's report. Dr. Kalich explicitly addressed Plaintiff's cocaine use pattern and expressly noted that Plaintiff's drug use may indeed exacerbate his symptoms. AR at 584–87. Thus, the ALJ's assertion that Dr. Kalich failed to explain her opinion is contradicted by the plain text of her report. For Dr. Catlin, the ALJ dismissed her report as advocacy-driven in part because "in every case the [ALJ] has ever seen, [she] always finds listing level mental impairment." AR at 620. The ALJ's history with Dr. Catlin is not an "actual impropriety" in her report and does not meet the substantial evidence standard. He also found that her report's lack of discussion of Plaintiff's use of substances besides alcohol indicated dishonesty—however, he found that Dr. Dixit's failure to mention Plaintiff's additional substance use merely limited the information available to inform her diagnoses without commenting on the veracity or candor of her report. This omission might go towards the reports' reliability, but it is not a sufficient basis for finding that Dr. Catlin's report was "designed for advocacy and not any neutral assessment." AR at 626. These are not legally sufficient reasons for discounting Dr. Kalich's and Dr. Catlin's medical opinions.

Furthermore, the ALJ improperly relied on the lack of medical records between 2015 and 2022 when rejecting Dr. Catlin's and Dr. Kalich's opinions. The ALJ noted that Plaintiff presented no medical evidence of impairment spanning 12 months during those seven years. Specifically, the

[5] The Commissioner revised the prior evaluation regulations for medical opinions for cases filed on or after March 27, 2017, from 20 C.F.R. § 404.1527 to 20 C.F.R. § 404.1520c. The newer regulations place primary importance on supportability and consistency, supplanting the former framework which created a hierarchy of opinions with presumptive evidentiary weight given to treating physicians' medical findings. *See Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). However, cases filed before March 27, 2017, are still governed by 20 C.F.R. § 404.1527. Plaintiff filed for benefits beginning in 2015, so his case is governed by the former framework.

ALJ rejected the examining doctors' opinions on the basis that there was no medical evidence of a diagnosis for the 12 months before or after both doctors' examinations. However, the analysis does not require 12 months of medical records; it also considers whether an impairment "*can be expected to last* for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). The statute's plain language indicates that a gap in medical records would not necessarily preclude a finding of impairment at Step Two, yet the ALJ's Step Two finding relies heavily on the absence of medical records between 2015 and 2022. The seven-year gap was the ALJ's primary basis for concluding that no limitation could be established as lasting 12 consecutive months, for elevating Dr. Peterson's testimony to significant weight, and for discounting Dr. Catlin's and Dr. Kalich's opinions. AR at 622–624. As the 12-month durational requirement may be fulfilled without medical opinion evidence that spans an exact 12-month period, the ALJ's reliance on this requires correction on remand. The gap in medical evidence alone was not a legally sufficient reason for discounting Dr. Kalich's and Dr. Catlin's medical opinions.

Moreover, ALJs are to consider the reasons behind a lack of treatment. *See* SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). Here, the ALJ conflated the absence of records with the absence of disability without considering why the gap in medical records might exist. Before drawing adverse inferences from a plaintiff's lack of medical records, an ALJ must consider other explanations. For example, "disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) (noting that "several [circuits] have considered whether disabled claimants may be denied benefits if their condition is remediable but they cannot afford the necessary medical treatment. All have concluded that the Commissioner may not deny benefits in those circumstances"). Where evidence suggests that a claimant's mental health or other conditions contributed to a lack of treatment, the ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, at *9. The ALJ did not conduct an inquiry into other explanations here. The record

contains substantial evidence suggesting that Plaintiff's failure to obtain treatment was attributable at least in part to his mental health conditions and a lack of insurance or funds. Plaintiff has not worked in over 15 years, has had no medical insurance since at least 2015, and struggled to attend court hearings and appointments. AR at 594, 673–707, 1018. The ALJ's failure to investigate other explanations constituted legal error. Taken together, these errors were legally insufficient reasons to reject the opinions of Dr. Kalich and Dr. Catlin, and they satisfy the second element of the credit-as-true test.[6]

As to the first credit-as-true element, however, the court finds that the record was not fully developed and that further administrative proceedings would in fact serve a useful purpose. The ALJ identified polysubstance use disorder as the only medically determinable impairment and analyzed no other impairments, stopping at Step Two when he found that the impairment was not severe. This determination was not based on substantial evidence. In cases where the ALJ improperly stops the Five Step analysis, especially at Step Two, the Ninth Circuit consistently reverses with further instructions to develop the record properly and to make decisions supported by substantial evidence. *See Delgado v. Heckler*, 722 F.2d 570, 571 (9th Cir. 1983) (reversing a denial of benefits because the ALJ did not present substantial evidence in finding the claimant's impairment not severe); *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (reversing a denial of benefits because the ALJ's reasons for stopping at step two were not substantial). Step Two is "a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017); *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (noting the Step Two determination is a de minimis screening device used to dispose of groundless claims). As this court observed in its prior order, "[a]mple authority cautions against a determination of nondisability at step two." *Hudson v. Saul*, No. 19-CV-00337-RMI, 2020 WL 2733930, at *4 (N.D. Cal. May 26, 2020) (quoting *Ortiz v. Comm'r of Soc. Sec.*, 425 F. App'x 653, 655 (9th Cir. 2011)).

---

[6] Because the additional record development set forth above is necessary and because the reasoning above is sufficient grounds for remand, the court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

Here, the ALJ terminated the five-step sequential evaluation at Step Two. Even when the medical record paints "an incomplete picture of [the claimant's] overall health during the relevant period," it can still "include[] evidence of problems sufficient to pass the de minimis threshold of step two." *Webb,* 433 F.3d at 687; *accord Glanden v. Kijakazi*, 86 F.4th 838, 844 (9th Cir. 2023) (holding that the ALJ erred in denying the plaintiff's claim without further analysis because the record met the Step Two de minimis bar). The ALJ found that Plaintiff's only medically determinable impairment was polysubstance use disorder, despite objective medical evidence in the record of PTSD, Borderline Intellectual Functioning, Psychotic Disorder, depressive disorders, and marked limitations in activities of daily living. As discussed prior, the ALJ did not provide legally sufficient reasons for rejecting the medical opinions that provided evidence of these impairments. The ALJ got as far as the "paragraph B" criteria, but never addressed the Listings, Plaintiff's residual functional capacity ("RFC"), or the availability of other work—determinations that must be made by the ALJ before disability may be established. *See Washington v. Kijakazi*, 72 F.4th 1029, 1041–42 (9th Cir. 2023) (holding that "regardless of whether the evidence at issue is credited, outstanding issues must be resolved before a disability determination can be made" where the ALJ did not proceed past the Step Two analysis). These errors were not harmless because the ALJ's Step Two denial rested entirely on the absence of treatment records; a proper inquiry could have materially changed the analysis and findings; multiple severe impairments were omitted from the ALJ's analysis; and Steps Three through Five were never reached. Where a Step Two error is not harmless, the Ninth Circuit has set a standard to remand for further proceedings. *See, e.g., Webb,* 433 F.3d at 688.

The absence of further analysis past Step Two is not merely a procedural gap. Each missing step is a substantive area of analysis that requires fact-finding before the ALJ can make a proper disability determination. *See Brown-Hunter v. Colvin,* 806 F.3d 487, 496 (9th Cir. 2015). For instance, in determining whether Plaintiff's substance use is a material factor to a finding of disability, the ALJ must first determine disability and then assess whether the limitations would still be disabling absent drug use. 20 C.F.R. § 404.1535; SSR 13-2p, at *6. The opinions on this issue are conflicting—while Dr. Peterson appeared to testify that Plaintiff's substance use (and

noncompliance with treatment) was material to any diagnoses, Dr. Catlin opined that his mental conditions would persist absent substance use, and the other medical sources did not provide clear opinions one way or the other. Likewise, Steps Four and Five require the ALJ to translate functional limitations (as established by the medical evidence) into work-related restrictions, and to analyze testimony from a vocational expert on what jobs Plaintiff can perform given his limitations. *See* 20 C.F.R. § 404.1520. The vocational evidence here is also conflicted. Timothy Farrell, the vocational expert at the December 2023 hearing, testified that Plaintiff could perform some basic jobs and that "the maximum amount [of being off task that] employers will tolerate is 10 percent." AR at 651. Because the ALJ terminated the evaluation at Step Two, this testimony was never incorporated into the ALJ's analysis. Paired with Dr. Catlin's opinion that Plaintiff would be off task more than 30% of the time, the question of whether Plaintiff can sustain employment remains open and genuinely contested. AR at 1100. Although this court has the authority to credit examining opinions as true, doing so would not fill existing gaps in the record. These are independent inquiries and factual findings that the ALJ must make in the first instance.

While the court is mindful of how long this claim has been pending, the duration does not justify remanding for an immediate award of benefits. The Ninth Circuit has seen other cases on appeal over extensive time periods, and a period of several years transpiring between an ALJ decision and a decision by this court is not unusual. *See Vasquez v. Astrue*, 572 F.3d 586, 603 n.2 (9th Cir. 2009). Plaintiff filed his initial Social Security application in 2015, and this matter is now before this court for the second time a decade later, with each appeal taking around five years. It is not uncommon for social security disability proceedings to take similar amounts of time.

**INSTRUCTIONS FOR REMAND**

At Step Two, an ALJ may find no severe impairment only when this non-severity is clearly established by the record. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). An impairment is non-severe if it does not significantly limit the claimant's ability to perform basic work activities, which include physical functions, understanding and remembering simple instructions, using judgment, responding appropriately to supervision and coworkers, and dealing with routine workplace changes. 20 C.F.R. § 404.1522(b)(3)–(6). Under the applicable standard of

review, this court must determine whether the ALJ had substantial evidence to find the record clearly established Plaintiff did not have severe impairments. *See Yuckert v. Bowen*, 841 F.2d 303, 307 (9th Cir. 1988) (finding that the ALJ improperly failed to apply the regulations defining severe impairments and remanding for application of the proper standard). Central to that inquiry is whether the ALJ properly evaluated medical opinions; in this evaluation, the ALJ must provide legally sufficient reasoning supported by substantial evidence when determining what weight to assign to opinions. *See Garrison*, 759 F.3d at 1022. The ALJ in this case erred by failing to articulate legitimate, legally sufficient reasoning for the weight assigned to the medical opinion evidence. On remand, the ALJ must articulate legally sufficient reasons for any rejection of medical opinion evidence and then conduct the remaining steps of the sequential evaluation as needed.

Moreover, the record here clearly indicates substance abuse. The DAA materiality determination is a factual determination that must be made by the ALJ. SSR 13-2p, 2013 WL 621536, at *14 (Feb. 20, 2013). This court's review is limited to the record as developed before the ALJ; it cannot make factual findings or resolve evidentiary conflicts in the first instance. *See Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) (holding that the court may review de novo but is limited to ensuring that statutory procedures have been followed). On remand, the ALJ must apply "the appropriate [five-step] sequential evaluation process twice" to "show how the claimant is disabled," and then to "show that the claimant [would or] would not be disabled absent DAA." SSR 13-2p, 2013 WL 621536, at *6.

**CONCLUSION**

For the reasons stated above, the decision of the ALJ is REVERSED and this case is REMANDED for further consideration as instructed in this Order. A separate judgment shall issue. Additionally, on remand, the ALJ is instructed to consider the other issues raised in Plaintiff's briefing and to modify the opinion as appropriate. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 WL 6626322, at *7 (D. Or. Dec. 28, 2017).

**IT IS SO ORDERED.**

Dated: August 10, 2026

ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California